IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
———————————————————————

Giovanny SUSANA, Rodery ROSATIO,      Index No.
Eduardo DIAZ, and Robert GONZALEZ,    08 Civ. 7832 (DAB)(RLE)

Plaintiffs,

-vs-          **COMPLAINT AND DEMAND
FOR JURY TRIAL**

THE NEW YORK CITY POLICE
DEPARTMENT, P.O. Eric ANDREOLIO, Shield
No. 04937,  P.O. Charles YARTON, Shield No.
26782,

Defendants.

———————————————————————

      Plaintiffs Giovanny SUSANA, Rodery ROSATIO, Eduardo DIAZ, AND Robert

GONZALEZ by their attorney, DAVID B. RANKIN, as and for their complaint, do

hereby state and allege:

<u>STATEMENT OF THE CASE</u>

    1)     This is a civil rights action in which the plaintiffs, Giovanny SUSANA,

Rodery ROSATIO, Eduardo DIAZ, AND Robert GONZALEZ seek redress from the

defendants, THE NEW YORK CITY POLICE DEPARTMENT for violation of their

rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United

States Constitution and 28 U.S.C. §§ 1331, 1332, and 1343 and 1367 in conjunction with

the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the laws and Constitution of the State

of New York.

2)    This action is based on the illegal arrests of 208 people at the 2007 Puerto Rican day parade.  The New York City Police Department's media relations officer, Paul Brown, stated to the New York Times that, "members had been identified in part by their colors…"  The plaintiffs in this lawsuit were rounded up and arrested without probable cause based only on an officers' suspicion that these individuals may have associated with a gang.

JURISDICTION

3)    This Court has original jurisdiction over plaintiffs' causes of action brought pursuant to 28 U.S.C. §§ 1331, 1332, and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

4)    This Court has supplemental jurisdiction over plaintiffs' claims against defendant under the Constitution and laws of the States of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

5)    Plaintiffs also invoke the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this being an action in which the plaintiffs seek, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

THE PARTIES

6)      At all times pertinent to this complaint, plaintiffs Giovanny SUSANA,

Rodery ROSATIO, Eduardo DIAZ, and Robert GONZALEZ were and are each lawfully

present in this District and Country. Plaintiffs are residents of New York City, New York.

Plaintiff Giovanny SUSANA resides at 78 Post Avenue, Apartment 3K, New York, NY

10034.  Plaintiff Rodery ROSATIO resides at 24-47 83rd Street, East Elmhurst, NY

11369.  Plaintiff Eduardo DIAZ resides at 448 Wilson Avenue, Third Floor, Brooklyn,

NY 11221.

7)      Defendant THE CITY OF NEW YORK is and was at all times relevant to

this action a municipal corporation authorized under the laws of the State of New York.

8)      Defendant's acts hereafter complained of were carried out intentionally,

recklessly, with malice and gross disregard for plaintiffs' rights.

9)      This is a litigation which arises in part out of the arrests of plaintiffs

Giovanny SUSANA and Rodery ROSATIO on June 10, 2007 at or about 11:00 A.M. in

the vicinity of 72nd Street and Madison Avenue, New York City, New York and the

subsequent dismissal of the charges preferred against the plaintiffs.

<u>STATEMENT OF FACTS</u>

10)     This is a litigation which arises in part out of the arrests of plaintiffs

Eduardo DIAZ on June 10, 2007 at or about 10:00 A.M. in the vicinity of 42nd Street at

Bryant Park, New York City, New York and the subsequent dismissal of the charges

preferred against the plaintiffs.

11)     The incidents, which give rise to this litigation, commenced on June 10,

2007 when the plaintiffs were arrested without probable cause in the vicinities of 42nd

Street and Bryant Park as well as 72nd Street and Madison Avenue.  Subsequent to the

arrest, plaintiffs were detained and imprisoned in custody until their arraignments in the Criminal Court of the City of New York, County of New York [Manhattan] when and where they were released without bail.

12)     On June 10, 2007, Plaintiffs Giovanny SUSANA and Rodery ROSATIO, along with others, were walking towards 73rd Street and Madison Avenue on 72nd Street while attending the Puerto Rican Day Parade celebration.

13)     Plaintiffs SUSANA and ROSATIO were stopped on the corner of 72nd Street and Madison Avenue by a barricade placed to prevent the flow of people from moving forward.

14)     Uniformed police officers removed that barricade and plaintiffs began to walk into the park.

15)     There was another barricade in the middle of the east side of the street. There was an opening in this barricade.  Several people were walking through this opening.

16)     Plaintiffs SUSANA and ROSATIO began to enter the park in order to proceed towards 73rd Street.

17)      Plaintiffs SUSANA and ROSATIO [and others] were stopped by two plain-clothed police officers and ordered to go around the barricade, stand in a small corner and show the officers their IDs.

18)     Plaintiff SUSANA describes the first police officer who stopped him as being a white male in his thirties to forties, approximately 5'6" in height, around 200lbs, with a goatee.

19)     Plaintiffs had not consumed any alcohol on the day of the incident and did nothing which they believed would make a police officer stop them.

20)     The police officer instructed plaintiffs to come towards him, and asked for their IDs.

21)     Plaintiffs SUSANA and ROSATIO produced their IDs and asked the police officer why they were being stopped.

22)     The police officer replied, "Don't worry about it.  Just give me your ID."

23)     Plaintiffs asked again why they were being stopped and then the officer arrested plaintiffs.

24)     Plaintiffs were placed in handcuffs.  Plaintiffs did not resist arrest.

25)     Plaintiff SUSANA witnessed while another individual asked the officers to let him go because he is a marine and had to report to his base the next day.  Upon reaching for his wallet to show the officers his ID, the officers placed handcuffs on him and slammed him on his face.  The man was bleeding.

26)     During the arrest, plaintiff SUSANA's wrist was injured due to the tightness of the plastic handcuffs that he was placed in.

27)     Plaintiffs, who were handcuffed in the rear, were placed in a "packed" police transport vehicle with other arrestees and transported to a New York City Police Department Precinct where they was detained in custody and processed.

28)     Due to the crowdedness of the vehicle, the erratic driving of the driver, the fact that plaintiff SUSANA was handcuffed in the rear, and plaintiff SUSANA's height, plaintiff SUSANA was injured from his head hitting against the transport vehicle several times, during the transportation to the NYPD Precinct.

29)     Upon arriving at One Police Plaza, plaintiffs were held outside presumably due to lack of capacity inside.

30)     Once inside One Police Plaza, plaintiffs were held in a cell, still handcuffed, waiting to be processed.

31)     Plaintiffs were frisked, searched and at One Police Plaza, photographed again and fingerprinted.

32)     Plaintiffs were at the One Police Plaza for several hours before they and others were transported to Manhattan Central Booking where they were detained in custody until 1:00 A.M. or thereabouts on June 11, 2007 when they then appeared at an arraignment and were released.

33)     On June 10, 2007, Plaintiffs Eduardo DIAZ and Robert GONZALEZ, along with others, were standing on 42nd Street near Bryant Park, while attending the Puerto Rican Day Parade celebration.

34)     Plaintiffs DIAZ and GONZALEZ were approached by four plain-clothed officers.

35)     Plaintiff DIAZ described the officers as all being white males.

36)     Plaintiff DIAZ was tapped on his shoulder from behind by one of the officers and told to place his hands in the air.  Plaintiff DIAZ complied.

37)     Plaintiff DIAZ's girlfriend asked the police officer what he was doing. The officer told her to shut up and then searched her 14 year old son.

38)     Plaintiffs DIAZ and GONZALEZ were searched and their wrists placed in plastic "zip" handcuffs behind their backs.  They were then sat on the ground for approximately half an hour.

39)     Plaintiffs DIAZ and GONZALEZ were not told why they were being arrested.

40)     Plaintiffs were not informed of their rights, before or after being placed in handcuffs.

41)     Plaintiff DIAZ's friend asked the officers why they were being arrested and the officer replied that they were being arrested for "being assholes."

42)     The officers took photographs of the plaintiffs while they were seated on the ground handcuffed.  One of the officers took a photograph of plaintiff DIAZ and drew a crown on it [the symbol for the Latin Kings].

43)     Plaintiffs DIAZ and GONZALEZ were transported in two vans to 425 Pearl Street.

44)     Upon arriving at 425 Pearl Street, plaintiffs DIAZ and GONZALEZ were placed in a holding cell with approximately a few hundred people.

45)     Once inside the holding cell, plaintiffs were frisked, searched, photographed again and fingerprinted.

46)     Plaintiff DIAZ had his inhaler taken from him by the police officers.

47)     An officer approached plaintiff DIAZ and asked him where he could find guns.  Plaintiff DIAZ did not respond.

48)     Plaintiff DIAZ asked for his phone call and requested to call a lawyer.  He was denied.

49)     Plaintiffs were held until approximately 7:30 P.M.

50)     Plaintiffs DIAZ and GONZALEZ were not given anything to eat and were not allowed to get water while being held.

51)     Plaintiff DIAZ was issued a desk appearance ticket for possession of a
gravity knife and released.

52)     Plaintiffs SUSANA, ROSATIO, and GONZALEZ were charged with
disorderly conduct and unlawful assembly.

53)     Plaintiffs SUSANA, ROSATIO, and GONZALEZ did not engage in
disorderly conduct, unlawful assembly or any other unlawful act. They simply wanted to
watch the Puerto Rican Day Parade.

54)     Plaintiffs had to go back to court numerous times before the charges
against them were dismissed.

55)     Plaintiff Giovanny SUSANA lost a job at a home for the elderly as a result
of this incident, when a background check revealed his arrest.  He had already taken the
photo for his ID and was given a permit to park in the employee parking lot.  Plaintiff
also risks losing his job as a security guard at Macy's because plaintiff's application for a
security guard license is being held up by the New York State Department of State,
Division of Licensing Services based on this incident.

56)     Plaintiffs were the subject of a massive sweep arrest by the New York
City Police Department the result of which caused the plaintiffs to be stopped, detained,
falsely arrested, falsely imprisoned, falsely charged, maliciously prosecuted, and
subjected to malicious abuse of criminal process for the collateral purpose of interfering
with the plaintiffs' right of attendance at the Puerto Rican Day Parade and their
association with others who themselves had the right to attend the New York City
authorized Puerto Rican Day Parade in order to watch the Parade and partake in the
celebration of Puerto Rican culture and pride.

57)    It is believed that the plaintiffs were part of a New York City Police Department field operation which was undertaken by the police and which caused the plaintiffs to be arrested and taken into custody although the plaintiffs had not done anything which any reasonable person, including law enforcement agents, could have reasonably and objectively believed to have been criminal in nature or otherwise unlawful in nature.

58)    Plaintiffs committed no criminal offense or other offense whatsoever and no reasonable police officer could reasonably have believed that the plaintiffs committed any criminal offense or any other offense under and of the law to justify their stop, detention, and custodial arrest or the subsequent intrusive search to which they were subjected in association with their arrest and detention and imprisonment.

59)    Plaintiffs were not screaming and yelling or otherwise interfering with anyone and plaintiffs were not directed to move along or otherwise leave before they were placed under arrest and plaintiffs did not hear any such directives before the police took the actions as described and placed the plaintiffs and others under arrest.

60)    The plaintiffs are not members of any gang and are not associated with any gang and were not involved in any kind of gang activity whatsoever at the time and location where they was placed under arrest.

61)    There was no basis for the stop, detention, and eventual custodial arrest of the plaintiffs by the New York City Police Officers, each of whom is an agent and employee of the City of New York.

62)    While the actions and conduct of the New York City Police Officers were unlawful they were taken in the course of their duties and functions and incidental to the

otherwise lawful performance of those duties and functions as New York City Police
Officers and as agents and employees of the City of New York.

63)     There was no probable cause for the arrest of plaintiffs and all associated
therewith including the plaintiffs' handcuffing, their frisk search, and their fingerprinting.
There was no basis, even, for a stop and detention.

64)      Plaintiffs were unreasonably stopped and detained and thereafter falsely
arrested and imprisoned and was subjected to excessive, unreasonable and unnecessary
force in the form of their handcuffing and were otherwise subjected to an unnecessary
and excessive and unreasonable search and fingerprinting.

65)     Rather than being released with a Summons or Desk Appearance Ticket,
for which plaintiffs' offense qualified and for which they were otherwise qualified,
plaintiffs were excessively, unnecessarily, and unreasonably detained in custody in lieu
of being released.

66)     It is believed that the actions and conduct herein described were propelled
by the crime offense enforcement initiatives of the City of New York which is grounded
in the philosophy of the "ends justifies the means."

67)     Such crime offense enforcement initiatives propel officers to make arrests
where there is no probable cause for such and no basis for the stop and detention of
individuals and, by such, to generate arrest statistics and to otherwise make examples of
individuals in the hope that such would depress crime offenses and other crime offenses.

68)     The policy and practices have a disproportionate impact on African
American and Latino individuals and other individuals of color as well as those who
reside in communities which are disproportionately populated by the poor, often times

and disproportionately who are persons of color and who, because of their race and/or national origin, are, regularly and disproportionately and for no other reason but the race and/or national origin factor or factors, singled out for stops, detentions and arrests.

69)    Plaintiffs were unlawfully stopped, detained, and falsely arrested and subjected to racially discriminatory and/or national origin discriminatory conduct and subjected to excessive and unreasonable and unnecessary force [in the form of handcuffing] and subjected to an unnecessary, unreasonable and excessive search, to an unnecessary and unreasonable and excessive detention, to an unnecessary, unreasonable, and excessive fingerprinting, to malicious prosecution, and to malicious abuse of criminal process for no legitimate purpose and for the collateral purpose of interfering with the right of young Latino individuals to attend the Puerto Rican Day Parade that was authorized by the City to assemble and convene on June 10, 2007 at the location where plaintiffs were standing in order to observe the Parade and by such to participate in the celebration of Puerto Rican national origin, pride, dignity, and culture.

70)    The actions, conduct, policies and practices and customs herein described violated the Plaintiffs' rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

71)    The actions, conduct, policies and practices, and customs violated Plaintiffs' rights under the laws and Constitution of the State of New York including the stop and detention of the Plaintiffs, the false arrest and imprisonment of the Plaintiffs, the assault and battery of the Plaintiffs [in the form of the handcuffing and the physical actions of taking the Plaintiffs into custody], and the search of the Plaintiffs, the fingerprinting of the Plaintiffs, the excessive detention of the Plaintiffs, the malicious

prosecution of the claim, and the malicious abuse of criminal process employed against the Plaintiffs, and including the racially discriminatory and/or national origin discriminatory treatment of the Plaintiffs.

72)     The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiffs.

73)     The Plaintiffs suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, embarrassment, humiliation, and psychological trauma and physical pain and suffering.

74)     Plaintiffs have not yet placed a monetary value on the damages which they incurred although they believe them to be substantial and to include compensatory and punitive damages.

75)     Plaintiffs have no other adequate remedy at law for the violation of their rights but through the commencement of this litigation.

76)     Plaintiffs DIAZ, SUSANA, and GONZALEZ filed notices of claim with the New York City Comptroller's office.    Delivery was received on September 10, 2007.  No offer has been made to settle these matters.

<u>FIRST CLAIM</u>

77)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

78)     The Plaintiffs were unlawfully stopped and detained and subsequently falsely arrested and falsely imprisoned and excessively detained in violation of their rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

79)     The Plaintiffs suffered injuries and damages.

## SECOND CLAIM

80)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

81)     The Plaintiffs were unlawfully stopped and detained and subsequently falsely arrested and falsely imprisoned and excessively detained in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

82)     The Plaintiffs suffered injuries and damages.

## THIRD CLAIM

83)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

84)     The Plaintiffs were subjected to racially  and/or national origin discriminatory treatment in violation of their rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

85)     The Plaintiffs suffered injuries and damages.

## FOURTH CLAIM

86)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

87)     The Plaintiffs were subjected to racially and/or national origin discriminatory treatment in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

88)     The Plaintiffs suffered injuries and damages.

FIFTH CLAIM

89)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

90)     The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiffs' rights under the, First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

91)     The Plaintiffs suffered injuries and damages.

SIXTH CLAIM

92)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

93)     The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiffs' rights under the laws and Constitution of the State of New York.

94)     The Plaintiffs suffered injuries and damages.

SEVENTH CLAIM

95)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

96)     Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of respondeat superior.

97)     The Plaintiffs suffered injuries and damages.

EIGHTH CLAIM

98)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

99)     The Plaintiffs were subjected to a search in violation of their rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

100)    The Plaintiffs suffered injuries and damages.

NINTH CLAIM

101)    The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

102)    The Plaintiffs were subjected to a search in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

103)    The Plaintiffs suffered injuries and damages.

TENTH CLAIM

104)    The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

105)    The Plaintiffs were subjected to excessive, unnecessary and unreasonable force in the form of their handcuffing in violation of their rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

106)    The Plaintiffs suffered injuries and damages.

ELEVENTH CLAIM

107)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

108)     The Plaintiffs were subjected to an assault and battery by the way of their physically being taken into custody and by their handcuffing in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

109)     The Plaintiffs suffered injuries and damages.

TWELFTH CLAIM

110)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

111)     The Plaintiffs were subjected to malicious prosecution in violation of their rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

112)     The Plaintiffs suffered injuries and damages.

THIRTEENTH CLAIM

113)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

114)     The Plaintiffs were maliciously prosecuted in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

115)     The Plaintiffs suffered injuries and damages.

FOURTEENTH CLAIM

116)    The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

117)    The Plaintiffs were subjected to malicious abuse of criminal process because he were topped and detained and falsely arrested for the collateral purpose of preventing him from attending an authorized Parade and by such to burden and inhibit their right of association and the expression of their pride in their Puerto Rican national origin and culture.

118)    Such violated the Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

119)    The Plaintiffs suffered injuries and damages.

FIFTHTEENTH CLAIM

120)    The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

121)    The Plaintiffs were subjected to malicious abuse of criminal process in violation of their rights as guaranteed under the laws and Constitution of the State of New York.

122)    The Plaintiffs suffered injuries and damages.

SIXTEENTH CLAIM

123)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

124)     The Plaintiffs' right of expression and association were inhibited by their stop, detention, and custodial arrest and imprisonment in violation of their rights as guaranteed under the First Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1984.

125)     The Plaintiffs suffered injuries and damages.

SEVENTEENTH CLAIM

126)     The Plaintiffs reiterate the forgoing paragraphs and incorporate such by reference herein.

127)     The Plaintiffs' right of association and expression were violated under the laws and Constitution of the State of New York.

128)     The Plaintiffs suffered injuries and damages.

JURY DEMAND

129)     Plaintiffs demand a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, plaintiffs demand judgment against the defendant and pray for relief as follows:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

Dated:      New York, New York
            September 8, 2008

Respectfully Submitted,

By:_____
     David B. Rankin (DR 0863)
     *Attorney for Plaintiff*
     350 Broadway, Suite 700
     New York, NY 10013
     t:212-226-4507